UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID MICHAEL BUZZELL,<br><br>                           Petitioner,<br>   v.<br><br>PATRICK GLEBE,<br><br>                           Respondent. | Case No. C10-1260-RAJ-JPD<br><br>REPORT AND RECOMMENDATION |

### INTRODUCTION AND SUMMARY CONCLUSION

Petitioner is currently in the custody of the Washington Department of Corrections pursuant to a 2007 King County Superior Court judgment and sentence. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from his conviction. Respondent has filed an answer to the petition together with relevant portions of the state court record, petitioner has filed a response to the answer, and respondent has filed a reply in support of his answer. This Court, having carefully reviewed the petition, the briefs of the parties, and the state court record, concludes that petitioner's federal habeas petition should be denied and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION - 1

FACTUAL/PROCEDURAL BACKGROUND

The Washington Court of Appeals summarized the facts relevant to petitioner's conviction as follows:

> In September 2006, David Buzzell temporarily moved into the home of his friend Melissa Morrison. At Morrison's residence, Buzzell slept on a mattress on the floor of the living area. Morrison had her own bedroom.
>
> On the night of September 24, 2006, Morrison retired to her bedroom at 9:30 p.m., where she read a book while reclining in bed. At some point, Buzzell entered Morrison's bedroom and sat on her bed, near her feet. According to Morrison, Buzzell, pointed to her breasts and said, "Show them to me. I want to see them." She refused. Buzzell again demanded to see Morrison's breasts, and she said, "No." At trial, Morrison recalled that during this encounter, Buzzell slurred his words a little and that he did not speak clearly. Buzzell then repeated, "Show me. I want to see them," and then removed Morrison's book from her hands. Buzzell attempted to untuck the blankets covering Morrison, who pushed his hands away. Buzzell told Morrison, "Just let me do this. Let me entertain you." Again, Morrison testified that she "kept telling him no." Buzzell successfully pulled down the covers, and pulled up her shirt, and moved to straddle Morrison. Morrison testified that Buzzell pinned her arms down, restraining them, and then put his mouth over her nipples. Morrison recalled that Buzzell stated, "If you didn't want this, you would fight harder." According to Morrison, she fought and continued to tell Buzzell no. Buzzell then pulled Morrison's underwear, tearing them. Buzzell then attempted to have sexual intercourse with Morrison. Buzzell did not have a sufficient erection and was therefore unable to penetrate Morrison. Morrison was able to grab a phone and call 911, but Buzzell "took it away." Because Buzzell was concentrating on the phone, Morrison was able to "move around and off the bed." Wearing only her t-shirt, Morrison headed to the front door. Before leaving, Morrison picked up a coat from the floor and wrapped it around her waist. Morrison then proceeded to go to a local fire station, located approximately one-half block from her house, for help.
>
> In contrast, at trial, Buzzell stated that the sexual contact between him and Morrison on September 24, 2006, was consensual. Buzzell testified that he spent the day watching TV and visiting a friend. In the evening, his friend Shayne Pendleton came over and the two played video games, watched TV, and drank several beers. After Pendleton left, Buzzell continued to play with the computer and watch TV. At some point, he laid down on his mattress. Unable to sleep, Buzzell went back to the computer room to smoke a cigarette and noticed Morrison was still awake, reading in bed. Buzzell entered Morrison's room to talk, and sat down on the end of her bed. Buzzell testified that the two made

REPORT AND RECOMMENDATION - 2

small talk.  Eventually, the "talking turned into hugging, turned into like hand holding, turned into cuddling."  Buzzell testified that he then "started playing with her breasts."  Buzzell said that Morrison never asked him to stop and no physical resistance took place.  He testified that "I was looking up into her face.  It seemed like she was enjoying herself.  And it was kind of weird.  The light in her eyes seemed to fade for a second or two like she blanked out or something."[1]  Buzzell stated that Morrison seemed disoriented and shocked.  Morrison picked up the phone and dialed 911.  Morrison then held the phone out to him.  Buzzell ended the call.  Morrison got off the bed and ran out the door.  According to Buzzell, he never restrained her and the sexual contact was consensual.

On September 24-25, 2006, Dean DeAlteriis, a lieutenant with the Eastside Fire and Rescue Department, was stationed at the North Bend substation.  Shortly after midnight on September 25, the doorbell of the station rang repeatedly.  Lt. DeAlteriis went to the door and found Morrison "upset, distraught, crying, not dressed appropriate."  Morrison was dressed only in a t-shirt and had a coat wrapped around her waist.  After a preliminary evaluation and investigation, DeAlteriis requested a King County Sheriff's officer.  Morrison was taken by a deputy sheriff to Harborview.  A sexual assault kit was performed on Morrison, which included swabs from her left and right breast.  The sample taken from the left breast matched Buzzell's DNA profile.  Testing on swabs taken from other locations was inconclusive.

The State charged Buzzell, in King County, with one count of attempted rape in the second degree, or, in the alternative, one count of indecent liberties.  At trial, Buzzell proposed six jury instructions including one on the elements of rape in the third degree, one that defined consent, and one for consent as an affirmative defense to both charges.  The trial court did not give Buzzell's proposed instruction on rape in the third degree or either instruction on consent.  The jury found Buzzell guilty of the crime of indecent liberties.  Buzzell was sentenced to 60 months in prison and ordered to pay a victim penalty assessment in the amount of $500.00.  Buzzell appeals, assigning error to the trial court's refusal to give his proposed jury instructions.

(Dkt. No. 21, Ex. 2 at 1-4.)

Petitioner appealed his conviction to the Washington Court of Appeals, Division I.  (*See id*., Exs. 3, 5 and 6.)  On February 9, 2009, the Court of Appeals filed an unpublished opinion affirming petitioner's conviction.  (*Id*., Ex. 2.)  Petitioner thereafter filed a motion for

---

[1] [Court of Appeals' footnote]  Ms. Morrison suffers grand mal and petit mal seizures due to a brain injury sustained years earlier.

REPORT AND RECOMMENDATION - 3

reconsideration which was denied on March 10, 2009.  (*Id*., Exs. 7 and 8.)

Petitioner next sought review of the Court of Appeals' decision in the Washington Supreme Court.  (Dkt. No. 21, Ex. 9.)  Petitioner presented the following issue to the Supreme Court for review:

> A criminal defendant's constitutional right to due process includes the right to have the jury fully instructed on the defense theory of the case that is supported by the evidence.  In the present case, the Court of Appeals ruled the trial court's refusal to give Mr. Buzzell's proposed consent instruction was harmless because Mr. Buzzell was able to present his case through his testimony and his counsel's closing argument and because the jury verdict indicated the jury rejected his theory of the case.  Where the evidence regarding consent was rigorously contested and the jury was specifically instructed to disregard any arguments that were not supported by the jury instructions, does the Court of Appeals ruling conflict with decisions by the United States Supreme Court, decisions by this Court, and other decisions by the Court of Appeals, as well as raise a significant question of law under the federal and state constitutions and involve an issue of substantial public interest that should be determined by this Court?

(*Id*., Ex. 9 at 1-2.)

On September 30, 2009, the Supreme Court denied review without comment.  (*Id*., Ex. 10.)  The Washington Court of Appeals issued its mandate terminating direct review on October 21, 2009.  (*Id*., Ex. 11.)  Petitioner now seeks federal habeas review of his conviction.

## GROUNDS FOR RELIEF

Petitioner presents the following four grounds for relief in his federal habeas petition:

**GROUND ONE:**

Melissa Morrison takes 300 milligrams of Dilatin [sic] twice a day, and drinks alcohol on a frequent basis.  Mixing alcohol with Dilatin [sic] can cause a seizure.  Buzzell claims Morrison had a seizure during his sexual encounter with Morrison.  Morrison told Lieutent [sic] DeAlteriis she had been drinking on night of September 24-25, 2006, then denies alcoholic consumpsion [sic] later that night at the hospital to Nurse Kamenga.

REPORT AND RECOMMENDATION - 4

**GROUND TWO:**

The DNA report and Morrison's description of events do not match.  The DNA report and the initial police report by Detective David Rainey do not match.  The DNA tests were tampered with accidental contact by David Buzzell's fingers because he was allowed to self-administer his own DNA test.

**GROUND THREE:**

Melissa Morrison's trial testimony cannot be taken as fact.

**GROUND FOUR:**

The trial court failed to instruct the jury on consent and the lesser offense of Attempted Rape in the Third Degree.

(*See* Dkt. No. 9 at 5, 7, 8 and 10.)

## DISCUSSION

Respondent concedes in his answer to the petition that petitioner has properly exhausted the first portion of his fourth ground for relief in which he alleges that the trial court erroneously denied him a jury instruction on the issue of consent.  Respondent argues, however, that petitioner failed to properly exhaust his first, second and third grounds for relief, as well as the second portion of his fourth ground for relief concerning the denial of a lesser offense instruction, because he failed to present the claims to the Washington Supreme Court.  Respondent further argues that petitioner's unexhausted claims are now procedurally barred under Washington law, and that petitioner's exhausted claim does not entitle him to relief in this federal habeas proceeding.

### Exhaustion

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct

REPORT AND RECOMMENDATION - 5

alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citations omitted). In order to provide the state courts with the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each appropriate state court for review, including a state supreme court with powers of discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

It is not enough that all the facts necessary to support a prisoner's federal claim were before the state courts or that a somewhat similar state law claim was made. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996).

The record makes clear that while petitioner presented multiple grounds for review to the Washington Court of Appeals on direct appeal, he presented only a single issue to the Washington Supreme Court for consideration, that concerning the trial court's refusal to give petitioner's proposed consent instruction. Only the issue presented to the Supreme Court has been properly exhausted.

Procedural Default

When a petitioner fails to exhaust his state court remedies and the court to which petitioner would be required to present his claims in order to satisfy the exhaustion requirement would now find the claims to be procedurally barred, there is a procedural default for purposes of federal habeas review. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

Respondent argues that petitioner would now be barred from presenting his unexhausted claims to the state courts under RCW 10.73.090. RCW 10.73.090(1) provides that a petition for

collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final. Petitioner's conviction became final for purposes of state law on October 21, 2009, the date the Court of Appeals issued its mandate on petitioner's direct appeal. It therefore appears clear that petitioner would now be time barred from returning to the state courts to present his unexhausted claims. *See* RCW 10.73.090.

Accordingly, this Court concludes that petitioner has procedurally defaulted on his first, second and third grounds for federal habeas relief, and on the second portion of his fourth ground for relief concerning the denial of a lesser offense instruction.

### Cause and Prejudice

When a state prisoner defaults on his federal claims in state court, pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

To satisfy the "cause" prong of the cause and prejudice standard, petitioner must show that some objective factor external to the defense prevented him from complying with the state's procedural rule. *Id*. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show "prejudice," the petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Only in an "extraordinary case" may the habeas court grant the writ without a showing of cause or prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a

REPORT AND RECOMMENDATION - 7

1 defendant who is actually innocent.  *Murray*, 477 U.S. at 495-96.

2     Petitioner fails to establish that any factor external to the defense prevented him from
3 complying with the state's procedural rules.  Because petitioner has not met his burden of
4 demonstrating cause for his procedural default, this Court need not determine whether petitioner
5 carried his burden of showing actual prejudice.  *Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448
6 (9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)).  In addition, petitioner makes
7 no colorable showing of actual innocence.  Petitioner therefore fails to demonstrate that his first,
8 second and third grounds for federal habeas relief, and the second portion of his fourth ground
9 for relief concerning the denial of a lesser offense instruction, are eligible for federal habeas
10 review.  Those claims should therefore be dismissed.

11 <u>Standard of Review for Exhausted Claims</u>

12     Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may
13 be granted with respect to any claim adjudicated on the merits in state court only if the state
14 court's decision was *contrary to*, or involved an *unreasonable application* of, clearly established
15 federal law, as determined by the Supreme Court, or if the decision was based on an
16 unreasonable determination of the facts in light of the evidence presented.  28 U.S.C.
17 § 2254(d) (emphasis added).

18     Under the "contrary to" clause, a federal habeas court may grant the writ only if the state
19 court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,
20 or if the state court decides a case differently than the Supreme Court has on a set of materially
21 indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "unreasonable
22 application" clause, a federal habeas court may grant the writ only if the state court identifies the
23 correct governing legal principle from the Supreme Court's decisions but unreasonably applies

REPORT AND RECOMMENDATION - 8

that principle to the facts of the prisoner's case. *Id*. The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

Consent Instruction

A writ of habeas corpus may issue only upon a finding that a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). It is not the province of federal habeas courts to re-examine state court conclusions regarding matters of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191 (1994). Accordingly, the fact that a jury instruction is incorrect under state law is not a basis for habeas relief. *Estelle*, 502 U.S. at 67-68.

The question that the federal habeas court must address when reviewing claims of instructional error in a state court trial is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Before a federal habeas court can overturn a state court conviction in which an allegedly erroneous instruction was given, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which

REPORT AND RECOMMENDATION - 9

1 was guaranteed to the defendant by the Fourteenth Amendment." *Cupp*, 414 U.S. at 146.  Where
2 the challenge is to the failure to give an instruction, the petitioner's burden is "especially heavy"
3 because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a
4 misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

5 Petitioner asserts in his federal habeas petition, as he did on direct appeal, that the trial
6 court's failure to give his proposed consent instructions deprived him of his constitutional right
7 to present his defense.  (*See* Dkt. No. 9 at 10 and 19.)  The Washington Court of Appeals, in
8 evaluating this claim, first considered whether, under Washington law, consent was a defense to
9 a charge of indecent liberties.  (*See*  Dkt. No. 21, Ex. 2 at 5-7.)  The Court concluded that it was.
10 (*Id.*, Ex. 2 at 7.)  The Court of Appeals next considered whether the jury was adequately
11 instructed.  (*Id.*, Ex. 2 at 7-8.)  The Court concluded that petitioner had established a factual basis
12 which entitled him to jury instructions supporting his theory of the case and, thus, that the trial
13 court erred in denying him the necessary consent instructions.  (*Id.*)  Finally, the Court of
14 Appeals considered whether the trial court's error was harmless.  (*Id.*, Ex. 2 at 8-9.)  The Court
15 concluded that because the error did not prevent petitioner from presenting and arguing his
16 theory of the case, the error was, in fact, harmless.  (*Id.*)

17 Respondent argues in his answer to the petition now before this Court that petitioner is
18 not entitled to federal habeas relief with respect to his claim challenging the trial court's failure
19 to give consent instructions because the claim is not based upon clearly established federal law.
20 Respondent is correct.  In *Gilmore v. Taylor*, 508 U.S. 333, (1993), the United States Supreme
21 Court made clear that it had never held, in a non-capital case, that an instructional error which
22 prevents a jury from considering evidence related to an affirmative defense violates due process.
23

REPORT AND RECOMMENDATION - 10

*See id*. at 342-44.  Thus, petitioner's claim of instructional error is not based on clearly established federal law and relief is therefore barred under 28 U.S.C. § 2244(d).

Respondent also argues that even if petitioner's claim were based on clearly established federal law, petitioner is not entitled to relief because the state appellate courts reasonably determined that the trial court's error in failing to instruct the jury on the issue of consent was harmless.  Respondent notes in his answer that a state court's determination that an error was harmless is entitled to deference under 28 U.S.C. § 2254(d).  *Inthavong v. Lamarque*, 420 F.3d 1055 (9th Cir. 2005).  In order for a federal habeas court to grant relief where a state court has determined that a constitutional error is harmless, the court must determine that (1) the state court's decision was "contrary to" or constituted an "unreasonable application" of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *Inthavong*, 420 F.3d at 1059.

The Washington Court of Appeals addressed the harmless error issue as follows:

> [T]he State argues that the error was harmless, because, if instructed properly, any reasonable jury would have reached the same result.  The test for determining whether a constitutional error is harmless is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  Neder v. U.S., 527 U.S. 1, 15, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (quoting Chapman v. Cal., 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)); see also State v. Easter, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996) (court finds constitutional error harmless only if convinced beyond a reasonable doubt that any reasonable jury would reach the same result without the error).  The State argues that Buzzell was able to argue consent as his theory of the case, even if no instruction was given.  During closing argument, Buzzell's attorney told the jury that, "[y]ou heard a lot about consent and was this consensual sexual contact.  And that's what Mr. Buzzell told you it was.  There's no definition of consent in this packet of instruction, but, again, it's really a common sense thing."  The prosecutor also discussed consent in his closing by summarizing Buzzell's testimony.  He did not address the legal consequences if the jury found that Morrison consented.
>
> Buzzell presented his theory of the case through his own testimony and counsel's argument that the victim had consented.  Morrison argued that he forced

REPORT AND RECOMMENDATION - 11

> her and she resisted. The case turned on which testimony the jury believed. Even with the missing jury instruction, this case turned on whether the jury believed Buzzell; his testimony was the only way he could meet his burden of establishing consent. The jury could not have accepted his testimony and returned a conviction. The instructional error was harmless.

(Dkt. No. 21, Ex. 2 at 5-9.)

The Court of Appeals applied the correct standard in evaluating the instructional error and reasonably concluded that the error was harmless. Petitioner makes no showing to the contrary. Thus, even assuming petitioner's claim were based upon clearly established federal law, he is not entitled to the relief he seeks in this federal habeas action.

<u>Certificate of Appealability</u>

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition.

//
//
//
//

REPORT AND RECOMMENDATION - 12

## CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's petition for writ of habeas corpus be denied and that this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied. A proposed order accompanies this Report and Recommendation.

DATED this 1st day of April, 2011.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge